David D. Lin (*pro hac vice* forthcoming)
david@iLawco.com
LEWIS & LIN, LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Fornix Holdings LLC
and CP Productions, Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| **Fornix Holdings LLC; and CP Productions, Inc.,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**John Doe #1 d/b/a Justswallows.com; John Doe #2 d/b/a xgloryhole.com; VeriSign, Inc.; Porkbun LLC; and Cloudflare, Inc.,**<br><br>*Defendants*. | Case No.<br><br>**Verified Complaint** |

Plaintiffs Fornix Holdings LLC ("Fornix") and CP Productions, Inc. ("CP Productions" and together with Fornix as "Plaintiffs") appear before this Court to file this Verified Complaint against John Doe #1 d/b/a Justswallows.com, whose true identity is unknown ("JS") and John Doe #2 d/b/a xgloryhole.com, whose true identity is unknown ("XGH," together with JS as the "Infringing Defendants" or "Doe Defendants"), VeriSign, Inc. ("VeriSign"), Porkbun LLC ("Porkbun"), and Cloudflare, Inc. ("Cloudflare," together with VeriSign and Porkbun as "Service Defendants"), and allege as follows:

1

**PRELIMINARY STATEMENT**

1. This is an action by Fornix and CP Productions, two Arizona corporations that own or license copyright registrations in various adult video works, for damages and injunctive relief arising from the massive infringement of Plaintiffs' copyrights by Doe Defendants, dedicated serial pirates of Plaintiffs' content.

2. Fornix is the registered copyright owner of 211 audiovisual works of adult video content, and the beneficial owner of some 800 other works which it is currently in the process of registering with the U.S. Copyright Office ("Works").

3. CP Productions operates the website located at <Gloryholeswallow.com> (the "GHS Website"), a highly acclaimed membership-based adult website featuring live action photos and videos.

4. Fornix licenses its video content solely to CP Productions for publication on the GHS Website.

5. Since 2018, Defendant JS, though multiple websites located at <justswallows.com> ("JS-Com"), <justswallows.co> ("JS-Co"), and <justswallow.net> ("JS-Net," collectively as "JS Websites"), has been dedicated to unlawfully copying, hosting, and redistributing copyrighted works of Plaintiffs and third parties. JS monetizes its infringement of Plaintiffs' Works by offering a premium membership to JS-Com, which promises more and faster downloads, and by displaying advertisements on all the JS Websites. JS relies on VeriSign, Porkbun, and Cloudflare's services to register and operate the JS Websites.[1]

---

[1] While Plaintiffs named VeriSign, Porkbun, and Cloudflare as Defendants, they do not seek affirmative relief or damages from them. They are named solely to provide notice and the opportunity to object to injunctive relief against the Infringing Defendants.

2

6. Since 2021, Defendant XGH, through a website located at <xgloryhole.com> ("XGH-Com"), has been dedicated to unlawfully copying, hosting, and redistributing copyrighted works of Plaintiffs and third parties. XGH monetizes its copyright infringement upon Plaintiffs' Works by displaying advertisements on XGH-Com. XGH relies on VeriSign and Cloudflare's services to register and operate XGH-Com.

7. JS and XGH intentionally conceal their identity by masking (i) their domain name registration information through redactions and privacy emails; and (ii) the name and location of their webservers through Cloudflare's reverse proxy service. This makes it much more difficult for Plaintiffs to enforce their copyrights.

8. Plaintiffs have spent considerable effort and resources attempting to stop Infringing Defendants' ongoing large-scale piracy. However, Infringing Defendants' continued theft of Plaintiffs' valuable intellectual property with impunity forced Plaintiffs to initiate this action.

**PARTIES**

9. Plaintiff Fornix is an Arizona corporation that specializes in adult media content management.

10. Plaintiff CP Productions is an Arizona corporation that produces adult entertainment content. Plaintiff CP Productions owns and runs the GHS Website, which it uses to distribute visual and audiovisual works.

11. Fornix owns the copyrights on the video content displayed on the GHS Website, which it licenses to CP Productions.

12. The true identities of Defendants JS and XGH are unknown.

13. According to publicly available domain name registration records, JS-Com uses a Polish registrar, NetArt Registrar Sp. z. o. o., and can be contacted at the email: "obeamjbpqvaa-r@mail.netart-registrar.com".

14. According to publicly available domain name registration records, JS-Net uses a U.S. registrar, Porkbun LLC, and although no email is listed, it can be contacted via an online form: https://porkbun.com/whois/contact/registrant/justswallow.net.

15. According to publicly available domain name registration records, JS-Co uses a U.S. registrar, Porkbun LLC, and although no email is listed, it can be contacted via an online form: https://porkbun.com/whois/contact/registrant/justswallows.co.

16. JS lists justswallowscom@gmail.com for its contact information on JS-Com.

17. According to the publicly available domain name registration records, XGH-Com uses a Malaysian registrar, Shinjiru Technology SDN BHD, and can be contacted at the email: "contact@privacyprotect.org".

18. Defendant VeriSign is a Delaware corporation based in Virginia and provides domain name registry services and Internet infrastructure for all ".com" and ".net" domain names.

19. Defendant Porkbun LLC is a Florida limited liability company based in Oregon, and currently provides domain name registration service for the JS domain names for JS-Co and JS-Net.

20. Defendant Cloudflare is a Delaware corporation based in California, and currently provides content delivery network ("CDN"), reverse-proxy, security, and other services to Infringing Defendants.

**JURISDICTION AND VENUE**

21. This is a civil action for injunctive and legal relief for copyright infringement, 17 U.S.C. § 501 *et seq.*

22. This Court has subject matter jurisdiction over Plaintiffs' claims for copyright infringement pursuant to 28 U.S.C. §§ 1331, 1338.

23. This Court has personal jurisdiction over Infringing Defendants, because Infringing Defendants deliberately target Plaintiffs, two Arizona entities, and because their intentional infringement of Plaintiffs' copyrights causes foreseeable damages to Plaintiffs within the State of Arizona.

24. Infringing Defendants are also subject to personal jurisdiction in Arizona because, upon information and belief, Infringing Defendants accessed and downloaded copyrighted video content from the GHS Website, which contains an agreement to submit to the exclusive jurisdiction of the federal and state courts of Arizona for any disputes concerning Plaintiffs' intellectual property rights.

25. This Court has personal jurisdiction over VeriSign because VeriSign continuously and systemically conducts its business in this District by providing ongoing infrastructure services for domain name registrars and registrants in the State of Arizona that own and/or manage ".com" or ".net" domain names, and such services have caused foreseeable injury in Arizona.

26. This Court has personal jurisdiction over Porkbun, because Porkbun, by providing its services, connects to thousands of domain name registrants within the State of Arizona, and such services have caused foreseeable injury in Arizona.

27. This Court has personal jurisdiction over Cloudflare, because Cloudflare continuously and systematically conducts its business through its data center located in

Phoenix, Arizona to connect to thousands of website operators and visitors within the State of Arizona, and such services have caused foreseeable injury in Arizona.

28. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)-(3).

29. Additionally, venue is proper in this District because, upon information and belief, Infringing Defendants accessed and downloaded copyrighted video content from the GHS Website, which contains an agreement to submit to the exclusive jurisdiction of the federal and state courts of Arizona for any disputes concerning Plaintiffs' intellectual property rights.

## FACTS COMMON TO ALL CLAIMS

### Plaintiffs' Business and Copyrighted Works

30. CP Productions produces, markets, and distributes adult entertainment visual and audiovisual works.

31. CP Productions owns and runs the GHS Website to distribute its works. Since 2011, CP Productions has operated the GHS Website as the exclusive channel for distributing its full-length videos and photographs.

32. As of today, CP Productions has produced and distributed 1085 videos on the GHS Website ("Works").

33. In 2018, Fornix was formed to prosecute, manage, and protect the copyrights in the Works.

34. Fornix handles the copyright management and licensing of the Works, including registering copyrights with the United States Copyright Office.

35. As of today, Fornix has registered copyrights for 211 of the Works ("Registered Works"). A full list of the copyright registrations is attached hereto as **Exhibit A**.

36. Fornix is currently seeking copyright registration for the remaining 874 of the Works ("Unregistered Works"). Fornix will continue to seek copyright protection for works to be produced by CP Productions in the future.

37. Fornix holds all exclusive rights in the Registered Works, and exclusively licenses the Works to CP Productions to display and distribute through the GHS Website.

38. CP Productions uses a pay-to-access model to distribute the Works via the GHS Website.

39. A non-member visitor to the GHS Website may view five free videos per internet protocol address ("IP address"). These free videos are trailer sized and typically less than two minutes long.

40. To access the full-length videos and photographs, which are, on average, more than 40 minutes long, a visitor must create an account with the GHS Website by providing a valid email address, username, and password.

41. When creating an account, a visitor must also pay for a subscription to become a member with full access to the Works. The GHS Website offers three subscription plans: a 3-month membership at $79.95, a 6-month membership at $149.95, and a 12-month membership at $269.95.

42. Membership is issued once the provided credit card information has been verified and cleared by a third-party fraud prevention service.

43. Members have unlimited access to all copyrighted content distributed via the GHS Website, including downloadable videos and photographs.

44. Every full-size video accessed from the GHS Website includes a prominent "warning" announcement at the beginning of the video. The latest version states: "This video contains a unique 'Digital Identification' code. The code can identify the Member who shares it. (See autograph.xvid.com) This video is copyright and trademark registered. **It's illegal to share!** Criminal Copyright Code: 17 U.S.C. 506(a) and 18 U.S.C. 2139(c) bpm" (emphasis in original).

45. Plaintiffs use non-party copyright enforcement agents to monitor for the Works and copyright infringement across the Internet. These agents help detect other websites that host or store the Works without Plaintiffs' authorization.

**Defendant JS's Infringing Conduct**

46. JS operates and maintains the JS Websites and owns the associated domain names <justswallows.com>, <justswallows.co>, and <justswallow.net> ("JS Domain Names").

47. JS's true identity is unknown based on the publicly available WHOIS records. The registrant information for all JS Domain Names is masked by privacy protection services. True and exact copies of the three websites' WHOIS records are attached as **Exhibit B**.

48. VeriSign is the authoritative registry for all domain names with the top-level domains ("TLDs") ".com" and ".net", including two JS Domain Names at issue: <justswallows.com> and <justswallow.net>. VeriSign controls the infrastructure for these domain names and maintains and propagates the following information for each: (i) the domain name, (ii) the primary and secondary name servers, (iii) the name of the registrar, and (iv) the expiration date of the registration. If needed, VeriSign has the right and ability to revoke access to a ".com" or ".net" domain name, rendering it "inactive."

49. Porkbun is the domain registrar for two JS Domain Names at issue: <justswallows.co> and <justswallow.net>. Porkbun maintains and propagates the following information for each domain: (i) the domain name, (ii) the primary and secondary name servers for the domain name, and (iii) the expiration date of the registration. If needed, Porkbun has the right and ability to revoke access to a domain name, rendering it "inactive," and to prevent the domain name from being transferred to another registrar.

50. The true IP addresses for the JS websites are unknown to Plaintiffs. JS shields the true address with Cloudflare's reverse-proxy services. A public search of the JS Domain Names yields the proxy IP addresses provided by Cloudflare. True and exact copies of the IP-lookup and accompanying WHOIS records for the JS Websites are attached as **Exhibit C**.

51. To utilize Cloudflare's content delivering network, reverse proxy services, security, and other services, JS entered a contractual relationship with Cloudflare and designated two Cloudflare name servers as the authoritative nameservers for the JS Domain Names. This causes requests for the JS Websites to be routed through and translated by Cloudflare's reverse-proxy service, served by Cloudflare's CDN service, and secured by Cloudflare's security services. If needed, Cloudflare has the right and ability to cease providing services to the JS websites.

52. JS relies on the infrastructure services provided by Verisign, Porkbun, and Cloudflare to operate the JS Websites. Without Verisign and Porkbun's services, the JS Websites would be extremely difficult to locate and lack the "online presence" of a domain name. Upon information and belief, without Cloudflare's services, the JS Websites would be slower, have higher bandwidth costs, lose security services that protect them from competitor pirates, and lose the anonymity afforded by the reverse-proxy service.

53. Since at least 2018, JS has been promoting and distributing unauthorized copies of Plaintiffs' Works via the JS Websites. Since mid-2022, the infringement has escalated, as JS started promoting a Premium Hub (described below) that charges a subscription for faster streaming and downloading of infringing copies of Plaintiffs' Works. JS also created two backup websites for JS-Com, JS-Co and JS-Net.

54. Each JS Website provides a search bar on the top of the webpage, allowing visitors to freely search Plaintiffs' Works by its trade name, "Gloryhole Swallow."

55. On the bottom of JS-Com's homepage, Plaintiffs' trade name is displayed among other "Trending Searches."

56. JS-Com also provides a "Video Categories" button on the bottom of the home page and on a drop-down side-bar. If the categories are accessed through this button, Plaintiffs' trade name "Gloryhole Swallow" is displayed as one of the primary categories. Selecting this category displays Plaintiffs' Works as a collection.

57. JS-Com does not show a total count of the videos under the "Gloryhole Swallow" category. However, Plaintiffs' third-party enforcement companies estimate that over 1,000 links on JS-Com contain listings displaying Plaintiffs' Works. Plaintiffs believe that the number of the infringing links will grow as Plaintiffs update the GHS Website.

58. Visitors of JS-Com can comment under each video. Many, if not most, of the entries include several comments about the content of the pirated videos, which indicates that these visitors have actually clicked the link to illegally access and view the Works.

59. JS-Com also shows the view counts of each video. Upon information and belief, many, if not all, of the Works displayed on JS-Com have a five-digit view count.

60. Based on the sheer number of videos and the view counts under each video, Plaintiffs believe that hundreds, if not thousands, of visitors to JS-Com have accessed and viewed the unauthorized copies of Plaintiffs' Works.

61. Both JS-Co and JS-Net provide a "Channels" button on the top bar of the websites. If accessing through this button, Plaintiffs' trade name "Gloryhole Swallow" is displayed as one of the primary categories. This category displays Plaintiffs' Works as a collection. JS-Co and JS-Net host and display around 565 videos of Plaintiffs' Works, and the number continues to grow as Plaintiffs update the GHS Website.

62. JS-Net also shows the view counts of each video. Upon information and belief, many, if not all, of the Works displayed on JS-Net have a five-digit view count.

63. JS is openly and brazenly profiting from operating the JS Websites.

64. On the view page of each video, JS-Com displays an advertisement—"Join Premium Hub. No Ads, No Waiting, HD Streaming & Downloads."

65. The Premium Hub charges USD $10.83 per month, which provides 50,000 megabytes of data per day, unlimited video preview, and upgraded download services.

66. The Premium Hub also redirects visitors to a website located at <premium.justswallows.com> ("Premium JS-Com"). Upon information and belief, JS stores and displays the more recent videos of Plaintiffs' Works on Premium JS-Com. Premium JS-Com also blatantly promotes a collection of the Works named "Latest Gloryhole Swallow (2022) – More will be added here as they come out" to attract more views to the website and thus more subscriptions.

67. Though JS-Co and JS-Net do not contain a "premium" sub-webpage, both JS-Co and JS-Net include banner advertisements and pop-up advertisements hovering on

top of the videos, which redirect any click on the videos to an advertisement page before playing the videos. Upon information and belief, JS profits from these advertisements.

68. While uploading the Works to the JS Websites and Premium JS-Com, JS made unauthorized copies of the Works, as well as derivatives including thumbnails.

69. By using Cloudflare's CDN services, JS caused copies of the unauthorized derivative thumbnails to be copied onto and cached by Cloudflare's CDN, including by servers located in Los Angeles.

70. JS is displaying and distributing the Works without Plaintiffs' authorization on the JS Websites and Premium JS-Com.

71. By redirecting visitors from JS-Com to Premium JS-Com and charging visitors a subscription fee to Premium JS-Com, as well as including advertisements on JS-Co and JS-Net, JS profits from its infringing conduct.

72. The JS Websites do not have a registered agent for the notification of copyright infringements as required by the Digital Millennium Copyright Act, 17 U.S.C. § 512, and therefore are ineligible for any safe harbors against liability that law provides.[2]

73. Through non-party copyright enforcement agents, Plaintiffs have submitted more than 2,600 takedown notices to the JS Websites. However, JS did not respond, did not comply with Plaintiffs' requests, and did not explain whether or not they would delete the infringing content from the JS Websites per Plaintiffs' notices.

74. Currently, there are still around 1,000 links on JS-Com, and approximately 2,500 links on JS-Co and JS-Net, directing to webpages that display pirated videos of

---

[2] The JS Websites are not listed in the Copyright Office's comprehensive registry of sites that have appointed registered agent in order to comply with 17 U.S.C. § 512(c). See http://www.copyright.gov/onlinesp/list/s_agents.html.

1  Plaintiffs' Works. The number of the infringing videos and webpages are likely to grow as
2  this case proceeds. A list of the links on the JS Websites directing to webpages that display
3  infringing videos is attached hereto as **Exhibit D.** Although some links occasionally lead
4  to a notice that the content has been removed for copyright violations, accessing the same
5  links from a different IP address with a clean browser cache shows the content is still visible.
6  Upon information and belief, this is either an intentional effort to thwart enforcement or
7  the result of using multiple servers for load balancing.

8   75.   Although the JS Websites display videos that are not produced or owned by
9  Plaintiffs, upon information and belief, Plaintiffs' Works are a significant portion of all the
10  videos displayed on the JS Websites.

11   76.   Upon information and belief, JS's inclusion of the works of other parties is
12  also without authorization and in violation of the respective owners' copyrights therein.
13  Plaintiffs base this belief on their knowledge of the industry and the observation that other
14  parties, whose works are pirated on the JS Websites, also distribute their works on a pay-
15  to-watch model and prohibit free downloading or sharing of their videos.

16  **Defendant XGH's Infringing Conduct**

17   77.   XGH operates and maintains XGH-Com and owns the associated domain
18  names <xgloryhole.com> ("XGH Domain Name").

19   78.   XGH's true identity is unknown based on the publicly available WHOIS
20  records. The registrant information for the XGH Domain Name is masked by a privacy
21  protection service. A true and exact copy of the website's WHOIS record is attached as
22  **Exhibit E**.

23   79.   VeriSign is the authoritative registry for all domain names with the TLDs
24  ".com" and ".net", including the XGH Domain Name at issue: <xgloryhole.com>.

VeriSign controls the infrastructure for this domain name and maintains and propagates the following information for each domain: (i) the domain name, (ii) the primary and secondary name servers, (iii) the name of the registrar, and (iv) the expiration date of the registration. If needed, VeriSign has the right and ability to revoke access to a ".com" or ".net" domain name, rendering it "inactive."

80. XGH-Com's true IP Address is unknown to Plaintiffs. XGH shields the true IP address with Cloudflare's reverse-proxy services. A public search of the XGH Domain Name yields the proxy IP addresses provided by Cloudflare. True and exact copies of the IP-lookup and accompanying WHOIS records for XGH-Com are attached as **Exhibit F**.

81. To utilize Cloudflare's content delivering network, reverse proxy services, security, and other services, XGH entered a contractual relationship with Cloudflare and designated two Cloudflare name servers as the authoritative nameservers for the XGH Domain Name.  This causes requests for XGH-Com to be routed through and translated by Cloudflare's reverse-proxy service, served by Cloudflare's CDN service, and secured by Cloudflare's security services. If needed, Cloudflare has the right and ability to cease providing services to the JS websites.

82. XGH relies on the infrastructure services provided by Verisign and Cloudflare to operate the XGH Website. Without Verisign's services, the XGH Website would be extremely difficult to locate and lack the "online presence" of a domain name. Upon information and belief, without Cloudflare's services, the XGH Website would be slower, have higher bandwidth costs, lose security services that protect it from competitor pirates, and lose the anonymity afforded by the reverse-proxy service.

83. Since at least 2021, XGH has been promoting and distributing unauthorized copies of Plaintiffs' Works via XGH-Com.

84. XGH-Com provides a search bar on the top of the webpage, allowing visitors to freely search Plaintiffs' Works by Plaintiffs' trade name, "Gloryhole Swallow."

85. XGH-Com also provides a "GloryHole Channels" button on the top of the home page. If accessing through this button, Plaintiffs' trade name "Gloryhole Swallow" is displayed as one of the primary categories. This category displays Plaintiffs' Works as a collection. As of the day of this filing, XGH-Com hosts and displays around 567 videos of Plaintiffs' Works, and the number continues to grow as Plaintiffs update the GHS Website.

86. Visitors of XGH-Com can "like" or "unlike" a video. Many, if not most, of the entries include positive "like" counts of the pirated videos, which indicates that these visitors have actually clicked the link to illegally access and view the Works.

87. Based on the sheer number of videos and the like counts under each video, Plaintiffs believe that hundreds, if not thousands, of visitors to XGH-Com have accessed and viewed the unauthorized copies of Plaintiffs' Works.

88. XGH is openly and brazenly profiting from operating XGH-Com.

89. XGH includes pop-up advertisements hovering on top of the videos, which redirect any click on the videos to an advertisement page before playing the videos. Upon information and belief, XGH profits from these advertisements.

90. While uploading the Works to XGH-Com, XGH made unauthorized copies of the Works, as well as derivatives including thumbnails.

91. By using Cloudflare's CDN services, XGH caused copies of the unauthorized derivative thumbnails to be copied onto and cached by Cloudflare's CDN, including by servers located in Los Angeles.

92. XGH is displaying and distributing the Works without Plaintiffs' authorization on XGH-Com.

93. XGH-Com does not have a registered agent for the notification of copyright infringements as required by the Digital Millennium Copyright Act, 17 U.S.C. § 512, and therefore is ineligible for any safe harbors against liability that law provides.

94. Through non-party copyright enforcement agents, Plaintiffs have submitted more than 2,900 takedown notices to XGH-Com. However, XGH did not respond, did not comply with Plaintiffs' requests, and did not explain whether or not they would delete the infringing content from the XGH website per Plaintiffs' notices.

95. Currently, XGH-Com hosts and displays around 567 videos of Plaintiffs' Works, and the number of the infringing videos is likely to grow as this case proceeds. XGH-Com also contains redirecting links that have multiple URLs ultimately pointing to one same video. A list of the links on the XGH-Com Websites directing to webpages that display infringing videos is attached hereto as **Exhibit G.** Although some links occasionally lead to a notice that the content has been removed for copyright violations, accessing the same links from a different IP address with a clean browser cache shows the content is still visible. Upon information and belief, this is either an intentional effort to thwart enforcement or the result of using multiple servers for load balancing.

96. Although XGH-Com displays videos that are not produced or owned by Plaintiffs, upon information and belief, Plaintiffs' Works are a significant portion of all the videos displayed on XGH-Com.

97. Upon information and belief, XGH's inclusion of the works of other parties is also without authorization and in violation of the respective owners' copyrights therein. Plaintiffs base this belief on their knowledge of the industry and the observation that other parties, whose works are pirated on XGH-Com, also distribute their works on a pay-to-watch model and prohibit free downloading or sharing of their videos.

**Harm to Plaintiffs**

98.    Because Plaintiffs rely on a pay-to-access model to distribute the Works via the GHS Website, the rampant infringement by the JS Websites and XGH-Com hurts Plaintiffs' ability to profit from their content.

99.    Numerous members of the GHS Website have informed Plaintiffs when they have found pirated videos outside of the GHS Website and have expressed complaints that they have had to pay for the Works while others can view them for free on the JS Websites or XGH-Com.

100.   As of today, the JS Websites and XGH-Com remain active, and a search of Plaintiffs' trade name, "Gloryhole Swallow" on Google search returns these websites among top results.

**COUNT I – COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501**

101.   Plaintiffs repeat and re-allege paragraphs 1-100 as if set forth herein.

102.   Fornix is the exclusive owner of all the rights defined in 17 U.S.C. § 106 for the Registered Works, as evidenced in **Exhibit A**.

103.   CP Productions is the exclusive licensee with the right to distribute and right to display the Registered Works under 17 U.S.C. § 106 (2) & (5) and is entitled to seek damages for infringement upon such rights pursuant to 17 U.S.C. § 501(b).

104.   The Infringing Defendants unlawfully created copies and derivative versions of the Works, either registered or unregistered, uploaded the unauthorized copies and derivatives to the JS Websites or XGH-Com, and caused—at a minimum—the unauthorized derivatives to be copied onto Cloudflare's US CDN network.

105. By uploading Plaintiffs' Works to the JS Websites or XGH-Com, where third parties could access and download the videos for their own use, the Infringing Defendants distributed the Works without Plaintiffs' authorization.

106. The Infringing Defendants' unauthorized copying and distribution of the Works violated Plaintiffs' exclusive rights under 17 U.S.C. § 106.

## REQUEST FOR RELIEF

Plaintiffs respectfully request that the Court hereby:

1. Enter a judgment declaring that the Infringing Defendants directly and willfully infringed Plaintiffs' copyrights in the Works distributed through the GHS Website pursuant to 17 U.S.C. § 501;

2. Enter a judgment against the Infringing Defendants for Plaintiffs' full actual and/or statutory damages arising from the Infringing Defendants' copyright infringement under 17 U.S.C. § 504;

3. An accounting and disgorgement of the Infringing Defendants' profits, gains, and advantages realized from its unlawful conduct under 17 U.S.C. § 504;

4. Enter an order directing the Infringing Defendants to pay Plaintiffs the costs, expenses, and reasonable attorney's fees incurred by them in prosecuting this action pursuant to 17 U.S.C. § 505;

5. Enter a judgment enjoining the Infringing Defendants, as well as their officers, agents, servants, employees, and attorneys, including the Service Defendants, namely VeriSign, Porkbun and Cloudflare, from future infringement of Plaintiffs' copyrights, including but not limited to requiring them to take all necessary action to:

a. Deactivate and cancel the JS Domains Names and the XGH Domain Name and transfer such domain names to an account under Plaintiffs' control;

b. Deactivate the JS Websites and XGH-Com and permanently delete all information stored thereon relevant to Plaintiffs' Works;

c. Delete all copies of Plaintiffs' Works that have been uploaded to any third-party websites;

d. Cease the provision of all internet services to the Infringing Defendants for the maintenance or operation of the JS Websites and XGH-Com, including but not limited to domain name registration, hosting, security, content delivery, and reverse proxy services; and

6. Enter a judgment granting Plaintiffs pre-judgment and post-judgment interest at the applicable rate; and

7. Grant to Plaintiffs any further relief, either in law or in equity, to which this Court deems it fit to receive.

DATED: February 16, 2023
        Brooklyn, New York

Respectfully submitted,

**LEWIS & LIN, LLC**

By: _____
David D. Lin, Esq.
(*pro hac vice* forthcoming)

*Attorneys for Fornix Holdings LLC and CP Productions, Inc.*

## VERIFICATION

I, DAVID L. GRAVES, declare:

1. I am the co-owner and director of Plaintiffs Fornix Holdings LLC and CP Productions Inc. I am an authorized agent of Plaintiffs for the matters concerned in this Verified Complaint.

2. I have read the foregoing Verified Complaint and knows the contents thereof. I have personal knowledge of Plaintiffs and their activities, including those set out in the foregoing Verified Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

3. The factual statements in this Verified Complaint concerning Plaintiffs, their activities, and their claims are true and correct, except as to the matters stated therein on information and belief, and that as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: February 16, 2023
Scottsdale, Arizona

David L. Graves

OFFICIAL SEAL
ASHLEY MAPES
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
COMM # 608354
My Comm. Expires Aug. 11, 2025

22